THE CHILDREN'S SEASHORE HOUSE FOR INVALID CHILDREN, PLAINTIFF IN ERROR, v. ATLANTIC CITY, DEFENDANT IN ERROR.

68  385!
68  707

Argued June 30, 1902—Decided November 17, 1902.

1. A charitable corporation already enjoying exemption from taxation for its house and the land on which it is located, under that section of the Tax act which exempts from taxation "all buildings used exclusively for charitable purposes, with the land whereon the same are erected, and which may be necessary for the fair enjoyment thereof, and the furniture and personal property used therein" (*Pamph. L.* 1894, *p.* 354; *Gen. Stat.*, *p.* 3320), purchased other land, a mile away, with the purpose of removing the institution there after a sale of the property it then occupied. Pending such sale it located and occupied a camp on the newly-acquired lot, consisting of tents for the accommodation of the overflow from the main institution during the months of July and August, with a one-story frame structure adjacent thereto used exclusively as a kitchen and laundry for the camp in which no one slept. Upon review of an assessment for taxes laid upon the newly-acquired land, it was *held* that neither the tents nor the frame kitchen were buildings in the sense of the statute and that the assessment must be affirmed.

2. The charter of the corporation limited its right to hold property to an amount not exceeding $100,000, but contained no clause exempting it from taxation. The exempting clause above recited was the general law of the state at the time the charter was granted. A general law was afterward passed increasing the capacity of benevolent and charitable corporations to hold property to a sum not exceeding $500,000, but this act contained a proviso to the effect that nothing therein contained should be construed to exempt the property of said corporation from taxation. Upon a review of the above assessment on *certiorari* the tax was sustained on the ground that the corporation had already obtained exemption from taxation to the amount limited by its charter, and that the result was not altered by the act increasing its capacity to hold property beyond the required amount because of the proviso attached thereto ; upon error the tax was sustained but not upon the ground stated, the court holding that the proviso did not operate as a repeal as to this class of corporations of the general act creating exemptions from taxation.

On error to the Supreme Court. For opinion of the Supreme Court see 36 *Vroom* 488.

For the plaintiff in error, *Thompson & Cole.*

For the defendant in error, *Godfrey & Godfrey.*

The opinion of the court was delivered by

HENDRICKSON, J.   This writ of error brings up for review an adjudication of the Supreme Court upon *certiorari* affirming an assessment of taxes levied upon lands of the prosecutor below situate upon the beach and bounded by Annapolis, Richmond and Atlantic avenues in Atlantic City.   The dimensions of the land are three hundred by three hundred and forty-four feet, which include an entire block in that section of the city. It is valued in the assessment at $15,000.

The tax was sustained in the Supreme Court on the ground, as stated in the syllabus, that the prosecutor was authorized by its charter to hold property not exceeding in value $30,000; that it owns and uses exclusively for charitable purposes certain buildings whereon the same are erected, valued in excess of that sum, and has been and is exempted from all taxation thereon; that it is not entitled to the exemption claimed, it being in excess of its grant to exemption, which is limited to property the value of which does not exceed $30,000.   The grounds of the conclusion are fully presented by the learned justice who delivered the opinion of the court, to which reference should be had, and they need not here be restated.

It must be observed that the special act incorporating the prosecutor (*Pamph. L.* 1873, *p.* 984) contained no provision exempting its property from taxation, nor did the supplement to said act, approved February 9th, 1875 (*Pamph. L., p.* 19 of previous acts), which enlarged the amount of property authorized to be held by the prosecutor to $100,000, embody in it any exemption from taxation.   This latter act seems to have been overlooked in the court below, but it does not affect the question under discussion, because the affidavits show that the property of the prosecutor included in the previous exemption referred to was worth $200,000.   The opinion holds that the act entitled "An act concerning corporations constituted for benevolent and charitable purposes" (*Pamph. L.*

1890, *p.* 46) includes within its general terms a corporation of the character of the prosecutor, and that its capacity to hold property is thereby increased from the limit of $30,000 to the amount or value of $500,000. But the act contains a section which reads as follows: "3. That nothing herein contained shall be construed to exempt the property of said corporation from taxation." This section, of course, is general in its application and does not make direct reference to the prosecutor. The Supreme Court has found this section to be a barrier against any exemption from taxation being allowed to the prosecutor beyond the amount of property it is authorized to hold under its charter. We are unable to concur in this view. At the time of the passage of this act a supplement to the Tax act, approved April 11th, 1866 (*Pamph. L., p.* 1078), was in full force. It was a general act, and by its fifth section it declares and defines the persons and property that shall be exempt from taxation. Included in the description of the property so declared exempt is the following paragraph: "And all buildings used exclusively for charitable purposes, with the land whereon the same are erected and which may be necessary for the fair enjoyment thereof and the furniture and personal property used therein." This exemption clause is found without verbal alteration in a supplement to this act, approved May 16th, 1894. *Pamph. L., p.* 354; *Gen. Stat., p.* 3320.

To give the effect suggested to the third section of the act of 1890 it would have to be regarded as operating to repeal the exempting clause of the general act of 1866, so far as the prosecutor and other like corporations are concerned. And it would be a repeal by implication only, which is not favored by the courts. There are no repealing words in the act of 1890, and, when these are absent, a strong presumption arises that no repeal was intended or it would have been expressed. *McNeeley* v. *Woodruff,* 1 *Gr.* 352; *Plum* v. *Lugar,* 20 *Vroom* 557. The act of 1890 does not say that such corporations, whose capacity to hold property are thereby increased, shall not enjoy the immunity from taxation they may be entitled to under the General Tax law, but only that they shall not

claim such immunity by virtue of that act. This matter, I think, is quite plain, so that we are not required to ascertain the precise object the legislature had in view in thus incorporating this proviso in the act of 1890. It may not be amiss to suggest a possible object. It is well understood that for a number of years anterior to the passage of the amendments to the constitution in 1875 quite a large number of corporations were constituted for benevolent and charitable purposes, some under the general act and others by special charter. In these the amount of property permitted to be held was usually stated, and in a number of these charters there was a provision exempting the property of the corporation from taxation. To illustrate, an act was approved in 1869 incorporating the First German Benevolent Society of Jersey City (*Pamph. L., p.* 1272), wherein the society is authorized to hold real and personal estate not exceeding $15,000 in value, and a provision is added exempting the property from taxation. . A number of other acts of like purport might be cited. It may be that the section of the act of 1890 was engrafted thereon as a precaution against a seeming confirmation and extension of such special exemptions from taxation. But whatever may have been the intent of the legislature in adding this section upon the principle above stated, it does not bar the prosecutor from seeking such exemption as it may be entitled to under the General Tax act. We think, however, that the tax in question must be sustained upon another ground, and that is for the reason that the property assessed is not exempt within the meaning of the act above quoted. To particularize, we think the evidence fails to show that there is any building upon the land used exclusively for charitable purposes in the sense of the statute.

The right to this exemption cannot be based upon the fact that the prosecutor has a house and buildings at Ohio avenue used exclusively for charitable purposes, for, as the case shows, the prosecutor has already obtained and enjoys complete immunity from taxation for its buildings and lands there situate. And such exemption can only be extended under the statute to the land on which the buildings are

erected, and not to its lands elsewhere. And hence, unless it can be shown that the prosecutor is also possessed of a building or buildings upon its land at Annapolis avenue used exclusively for charitable purposes in the sense of the statute, its claim of exemption from taxation for its property there must fail. In considering this question recourse must be had to the evidence before us. The following are the facts in brief as therein developed.

The main house and buildings of the prosecutor are located at Ohio avenue, a mile away, in an easterly direction, from the property in question. This latter property was used alto-- gether as a camp for boys over twelve years of age. It was used to accommodate the overflow from the main house at Ohio avenue, and consisted of two sleeping tents, one dining tent and a one-story frame structure used for a kitchen and laundry. The boys, who averaged about thirty-six in number, and the help employed, occupied tents which were used from July 1st to September 1st and then taken down for the balance of the year. The camp occupied a strip of land about one-eighth of the depth of the lot.. Its management and direction emanated from the main house at Ohio avenue, from whence many of the supplies were sent and where the records and expense accounts of the camp were kept. The property was not bought for the purpose of the camp, but with the object of selling the property at Ohio avenue and moving the institution to the newly-purchased lot, but after having the latter for a year the society decided to use it for the care of the boys it could not take care of in the main institution. This property is valued at $60,000 and upwards, and at the time the evidence was being taken the society was offering for sale its property at Ohio avenue for $200,000, with a view to such removal. On May 20th, when the tax was assessed, there was nothing upon the land except the structure used for a kitchen and laundry, which was vacant.

In considering the question here raised we might ask what is a building in the sense of the statute. According to Webster, a building is defined as "that which is built; a fabric or edifice constructed, as a house, a church," &c. This

definition was adopted in construing the word as used in the Mechanics' Lien law in *Coddington* v. *Dry Dock Co.*, 2 *Vroom* 477. It needs no argument to conclude that a tent is not a building. Is the frame tenement used for a kitchen and laundry only, without any accommodations for sleeping or for the care and shelter of the objects of the charity, a building in the sense of the statute? It is, perhaps, within the ordinary definition of "building," taken in its broadest sense; but is it within the statutory meaning? The word "building" in a statute will almost always depend for its meaning in some degree upon the particular subject-matter and its connection with other words. *Bish. Stat. Cr.* 292. The use of the word in the statute under consideration is clearly within the rule here suggested. For it is here associated with other objects of a charitable character that are to enjoy the like immunity, and the maxim *noscitur a sociis* would apply. And the statutory definition is not merely buildings, but buildings used exclusively for charitable purposes, with the land whereon the same are erected and which may be necessary to the fair enjoyment thereof. The associated words where, as in this clause, buildings are the principal subject-matter of the exemption, are colleges, school-houses, buildings erected and used for religious worship, buildings used as asylums or schools for the care, cure, maintenance and education of feeble-minded persons and children. This circumstance indicates that the buildings here intended were to be such as would comfortably house the class of persons to be benefited by the charity and the officers and agents who were to administer the same. The fact that the exemption is extended to "the furniture and personal property used therein" is a like indication. The qualifying words, "used exclusively for charitable purposes," further point to the building as a place where the charitable use was to have a concrete existence. Again, the words, "and the land, &c., necessary to the fair enjoyment" of the buildings, shows that the building was to be the principal factor in the scheme and not a mere incident to the purposes of an encampment or some other temporary device.

The conclusion we have reached from these observations and the other circumstances developed by the testimony is that the structure for kitchen and laundry purposes before referred to is not a building in the sense of the statute under consideration. To determine otherwise might have the effect of encouraging evasions of this wholesome law and the consequent exemption, unlawfully, of large aggregations of property from the common burden of taxation. The result thus reached is also in harmony with the general purposes of the corporation, which are declared in the charter to be "to provide at Atlantic City a house and medical treatment during the summer season for invalid children and those needing the benefit of sea air." In reaching the conclusion we are not unmindful of the principle that statutes in aid of such charitable purposes as are here declared are not to be construed narrowly, but liberally. *Sisters of Charity* v. *Chatham Township, 23 Vroom* 373. And although giving full heed to that beneficent rule of construction, we are unable to find in the statute any support for the claim of exemption under the facts in this case. The result is that the judgment of the Supreme Court is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 11.

*For reversal*—None.