Asociación de Maestros de Puerto Rico, demandante y apelada, *v.* Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelante.

Núm. 7652.—*Sometido:* Diciembre 14, 1938. *Resuelto:* Marzo 24, 1939.

*Hon. Procurador General B. Fernández García y C. Andréu Ribas,
Subprocurador General, abogados del apelante; Virgilio Brunet,
abogado de la apelada.*

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

En agosto 6 de 1931, de conformidad con autoridad legislativa expresa, el Comisionado del Interior vendió una parcela de terreno que medía 880 metros cuadrados a la Asociación de Maestros de Puerto Rico. La venta contenía una condición resolutoria al efecto de que la compradora debía construir en el término de cinco años, "un edificio de dos plantas, adecuado a los fines de la Asociación, y a un costo que no será menor de cincuenta mil dólares. . ." (Véase la Resolución Conjunta núm. 16 de 1925, Leyes de ese año, pág. 1019.) La condición fué cumplida más tarde y el edificio conocido por "Templo del Maestro" fué inaugurado formalmente durante el mes de abril del año 1935.

En enero 15 de 1935, para fines contributivos, el Tesorero de Puerto Rico tasó el solar de la Asociación, y más tarde

cobró la contribución correspondiente al año fiscal 1935–36. La contribuyente alegó que según el artículo 291 del Código Político (Estatutos Revisados de 1911, pág. 582), el terreno había quedado exento de contribuciones en abril de 1935, al ser terminado el edificio de la Asociación. Sostuvo, por tanto, que no surgió en julio de 1935 el deber de pagar las contribuciones para el siguiente año. En su consecuencia, se hizo el pago bajo protesta y se entabló el presente recurso. El Tesorero apela de una sentencia dictada a favor de la demandante.

Sería conveniente explicar que aunque esta apelación envuelve tan sólo la devolución de las contribuciones sobre la propiedad del solar para el año contributivo 1935–36, la demandante originalmente trataba de recobrar las contribuciones correspondientes a varios años anteriores. La sentencia original de la corte de distrito declaró sin lugar la demanda y fué tan sólo en reconsideración que se decretó la devolución de las contribuciones correspondientes a 1935–36, ascendentes a $114.82.

El razonamiento de la corte de distrito fué el siguiente:

"Las partes sometieron al tribunal la moción de reconsideración de la sentencia en este caso en cuanto deniega la devolución de la contribución pagada bajo protesta sobre el solar descrito en la demanda por el año económico 1935–1936, por entender la demandante que dicha contibución debió ser cancelada, toda vez que de acuerdo con el artículo 291, apartado (e) del Código Político, tanto el solar como el edificio, estaban exentos de la contribución; y por cuanto si bien la contribución quedó impuesta por el artículo 295 del Código Político el 15 de enero de 1935, la misma no era pagadera, o sea debida, hasta el 1ro. de julio cuando comenzó el año económico 1935–1936, de acuerdo con el artículo 330 del referido Código, para cuya fecha ya el edificio 'Templo del Maestro' estaba terminado y utilizado como centro de educación y cultura y como desde abril de 1935 quedaron exentos de tributación para la imposición de contribuciones, tanto el solar como el edificio, por el artículo 291 citado, la contribución cobrada por el año económico 1935–1936 sobre el solar parece contraria a ley y es de justicia su devolución."

El inciso (e) del artículo 291 del Código Político, supra, provee:

"Artículo 291.—Estarán exentas de tributación para la imposición de contribuciones las propiedades siguientes:

\*       \*       \*       \*       \*       \*       \*

"(e) Todo edificio utilizado y destinado exclusivamente para el culto religioso, incluyendo escaños, asientos y muebles dentro del mismo; todo edificio utilizado para centro de educación, literario, científico o caritativo, con los muebles, enseres y aparatos pertenecientes al mismo; y toda superficie de terreno, cuya extensión no exceda de cinco cuerdas, en el cual dicho edificio o edificios esté o estén construídos; siempre que tales terrenos y edificios no sean arrendados o utilizados de otra manera con el fin de que produzcan un beneficio pecuniario, ya al arrendador, ya al arrendatario."

No tenemos duda alguna de que el edificio al quedar enteramente terminado y al ser inaugurado, cumplió con las condiciones del artículo anterior y que, por ende, en su oportunidad tenía derecho a la exención en él prescrita. La única cuestión que está ante nos gira sobre la determinación de la fecha en que surge por primera vez la responsabilidad personal de un contribuyente en relación con las contribuciones de cualquier año fiscal, toda vez que los cambios en el uso o dominio de la propiedad después de dicha fecha no afectan tal responsabilidad.

La apelada cita jurisprudencia al efecto de que una exención de la naturaleza de la que está bajo nuestra consideración puede ser aplicable tan pronto como se inicia la construcción del edificio cultural o religioso. Hemos examinado las autoridades y nos vemos precisados a concluir que no representan el criterio de la mayoría. En 34 A.L.R. 634, a la página 672, se dice:

"De ordinario se ha resuelto que no están exentos del pago de contribuciones los terrenos sobre los cuales se están fabricando, o se proponen de buena fe construir, edificios que habrán de ser utilizados para fines caritativos. *Boston Soc. v. Boston*, (1880) 129 Mass. 178; *Children's Seashore House v. Atlantic City*, (1902) 68 N.J.L. 385,

59 L.R.A. 947, 53 Atl. 399; *Institute of Holy Angels* v. *Ft. Lee,* (1910) 80 N. J. L. 545, 77 Atl. 1035 . . . (más casos citados.) . . .''

Hay un principio general bien conocido al efecto de que una exención de contribuciones hecha a virtud de un estatuto debe ser interpretada estrictamente.

El artículo 291, supra, claramente exime tan sólo el *''edificio utilizado* para centro de educación, literario, científico. . .; y toda superficie de terreno cuya extensión no exceda de cinco cuerdas, en el cual dicho edificio o edificios *esté o estén construídos.''* (Bastardillas nuestras.) Para disfrutar del privilegio el edificio tiene que ser utilizado y destinado al fin especialmente dispuesto. El contexto claro del estatuto es de por sí suficiente para destruir la contención de la apelada.

■ El Tesorero señala dos errores. Sostiene el primero que la corte cometió error al reconsiderar parcialmente su sentencia original, toda vez que la moción de reconsideración no estaba sostenida por ninguna jurisprudencia o principio de derecho. Si se acepta que una corte tiene facultad para modificar o dejar sin efecto, *sua sponte,* sus propias sentencias, entonces no hay razón para condenar su proceder por el mero hecho de que la parte perdidosa, al pedir tal modificación, deja de citar jurisprudencia. Está dentro de las facultades de una corte el corregir aquélla que a su juicio es una resolución equivocada, y aunque la jurisprudencia pudo tal vez haber fortalecido la posición asumida, ella no era indispensable. Además, en este caso específico la demandante hizo constar en su moción de reconsideración la ley en que fundaba su petición.

■■ El error restante es en verdad importante. El Tesorero sostiene que cuando se ''tasan'' bienes inmuebles de conformidad con los artículos 298 y siguientes del Código Político, en enero 15 de cualquier año fiscal, la persona a cuyo nombre son tasados es inmediatamente responsable del pago de las contribuciones sobre la propiedad correspondien-

tes a tal tasación, es decir, las del siguiente año fiscal que se inicia el primero de julio próximo. Basado en estas premisas el Tesorero sostiene que cualquier cambio que haya en el dominio o en la naturaleza contributiva de la propiedad con posterioridad al 15 de enero, aunque ocurra antes del primero de julio, cuando vence el primer semestre de la contribución, no afecta la responsabilidad del dueño que figuraba como tal en enero 15. Ese dueño es aún responsable del pago de toda la contribución.

En el párrafo (F) de su estipulación de hechos las partes convinieron en las siguientes circunstancias:

"(F) Que en dicho solar no se había edificado ni existía construcción alguna para la fecha en que se impuso la contribución antes mencionada."

El párrafo que antecede aparentemente contiene una admisión en favor del Tesorero. La imposición de una contribución debe seguir a una tasación válida de bienes para fines contributivos. Toda vez que la contribuyente no levanta cuestión alguna sobre la validez de la tasación de la propiedad ni respecto a su terminación, nos sentimos obligados a resolver que ambos requisitos fueron cumplidos.

El artículo 298 del Código Político dispone que los bienes raíces serán tasados "a nombre de la persona que fuere dueña de los mismos o que estuviere en posesión de ellos el día 15 de enero."

Aunque no hemos podido hallar ninguna disposición estatutaria específica ni decisión local alguna respecto al momento en que por primera vez surge en esta jurisdicción la responsabilidad del pago de una contribución sobre la propiedad, las decisiones uniformes de varios estados de la Unión han expresado un criterio bien definido. La fecha en que la tasación de bienes para fines contributivos queda terminada parece ser aceptada por la mayoría como determinante de tal responsabilidad.

La necesidad de fijar una fecha, anterior al momento físico del cobro, en que el estado puede definitivamente calcular sus

ingresos para el siguiente año fiscal, es obvia. Toma tiempo el preparar la lista de las tasaciones sobre las propiedades, las planillas y los recibos de contribuciones. El estado contributivo (*taxable status*) de la propiedad debe permanecer inalterado después de determinado período de tiempo y con anterioridad a la fecha del pago de la contribución, puesto que el Tesorero debe tener una base fija sobre la cual flotar sus empréstitos, aumentar o reducir las contribuciones, etc.

Ésta, opinamos, es la razón fundamental de la regla. Además, el cobro resultaría incierto y poco práctico si el estado tuviera que permitir exenciones, seguir la pista a nuevos compradores o distribuir las contribuciones entre los dueños subsiguientes durante el mismo año.

En casos de ventas a compradores que de por sí están exentos del pago de contribuciones, se ha resuelto que el dueño del terreno al tiempo de la tasación es personalmente responsable del pago de las contribuciones impuestas sobre el mismo. El Fiscal General de Puerto Rico una vez emitió una opinión a ese efecto. 14 Opiniones del Attorney General 448. Véanse también *Gloster Lumber Co., Inc.* v. *Adams County,* 163 So. 541; *Buckout* v. *City of New York,* 82 App. Div. 218 (N.Y.); *Prytania St. Market Co.* v. *City of New Orleans,* 110 La. 835, 34 So. 797; *Wood* v. *McCook Waterworks Co. et al.,* 149 N. W. 417; *New Orleans Bank and Trust Co.* v. *City of New Orleans,* 147 So. 42, 176 La. 946; *City of Oakland* v. *Whipple,* 39 Cal. 112 y 61 Corpus Juris 171, párr. 126.

En el caso de *Wood,* supra, se dice:

"¿Canceló la venta que de los bienes se hizo a la ciudad en julio primero la responsabilidad de la parte demandada a pagar la contribución, debido al hecho de que después que la propiedad pasó a la ciudad no estaba sujeta al pago de contribuciones? Creemos que la respuesta a esta pregunta debe ser adversa al demandado. El caso no es distinto de lo que sería si luego de la parte demandada haber radicado sus planillas y de haber hecho el tasador la tasación, y mientras dicho demandado aún era dueño de la propiedad, hubiera dedi-

cado ésta a un nuevo uso que la eximiera del pago de contribuciones. Tal nuevo uso no le exoneraría de responsabilidad. *New York* v. *Commissioners*, 104 U. S. 466, 26 L. ed. 632.''

En otro sitio la corte dice:

''Supongamos que el demandado en julio primero hubiera vendido la propiedad ya tasada y con el dinero obtenido de la venta hubiera comprado bonos de los Estados Unidos: ¿Se hubiera librado ésta del pago de contribuciones? Claro que no. El hecho de que la tasación y la contribución posteriormente impuesta sobre la propiedad no se hubieran convertido en un gravamen sobre ésta en tal forma que hiciera al adquirente responsable de la misma, es cuestión que carece enteramente de importancia.''

Las razones para que se fije un término a partir del cual surge la responsabilidad personal son expresadas del modo siguiente por el Juez Cooley en su brillante obra sobre contribuciones:

''MOMENTO DE LA TASACIÓN. Las tasaciones se hacen periódicamente, y en muchos de los estados una vez al año. Cuando se requiere una tasación anual, si el funcionario meramente copia para el año la lista del año anterior, la tasación será nula. La reglamentación de costumbre es que la tasación debe hacerse o completarse en determinado día o prepararse para determinado día. Esto fija la responsabilidad de las personas y de las propiedades sujetas a la contribución para el año. De esto surgen algunas inconveniencias y desigualdades, mas alguna reglamentación de esta índole es indispensable. No puede tenerse ocupado todo el año a un cuerpo de funcionarios contributivos simplemente para que vigilen los traspasos de propiedades, el movimiento de las personas, y las vicisitudes de los negocios, para poder igualar las cargas sobre ellos; las tasaciones periódicas, de producir injusticias en un caso, pueden corregirlas en el próximo, y en su totalidad es probable que resulten justas. Sea ello como fuere, constituyen la mejor reglamentación que la ley puede establecer. 'En la imposición de contribuciones es imposible lograr justicia e igualdad exactas y precisas a todas luces. Si tratamos de lograrlo, tendríamos quizá que dividir las contribuciones de un año sobre determinado artículo entre una docena de individuos distintos que lo poseyeron en diversas épocas del año y entonces estaríamos tan lejos del fin deseado como cuando empezamos. La proposición es utópica. La Asamblea Legislativa debe adoptar algún sistema práctico;' y este

sistema práctico puede hallarse en el antes indicado. Por ende, toda persona debe pagar contribuciones sobre sus bienes muebles de acuerdo con la tasación hecha en determinada fecha, y toda propiedad inmueble de acuerdo con el valor fijado en la lista de contribuciones correspondiente. Los cambios en el dominio o en el valor de la propiedad habidos con posterioridad al momento de la tasación no pueden ser tomados en cuenta para fines contributivos hasta el momento en que se haga una nueva tasación. Esta es la regla general." Cooley on Taxation, Vol. 3, pág. 2138, sección 1062.

Como en el presente caso se admite que la contribución se había impuesto antes de construirse el edificio sobre el solar, ha desaparecido la dificultad de determinar cuándo tal tasación quedó completada.

*Bajo estas circunstancias, y en vista de las autoridades citadas, la sentencia de la corte inferior debe ser revocada.*

El Juez Presidente Sr. Del Toro no intervino.