PEDRO SALOM PIZÁ, demandante y recurrido, *v.* SECRETA-
RIO DE HACIENDA, demandado y recurrente.

*Número:* R-64-93     *Resuelto:* 12 de abril de 1965

*J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado
Viera, Procurador General Auxiliar,* abogados del recurren-
te; *Goldman & Santiago,* abogados del recurrido.

Sala integrada por el Juez Presidente Interino Señor Pérez
Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramí-
rez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El recurrido Pedro Salom Pizá es el propietario de un inmueble sito en la Avenida Ponce de León, de Santurce, conocido como Hotel Capitol. En el solar de 1273 metros cuadrados ubican dos edificios: uno, de cinco plantas, construido en 1928; el otro, también de cinco plantas, fue construido en dos etapas, la primera consistente del sótano y dos plantas, en 1951, y la segunda, consistente de las tres plantas superiores, en 1961.

Para el año fiscal 1951–52, al inicio del sistema de tasación científica, y durante los años siguientes hasta el 1957–58, el Secretario de Hacienda le fijó a dicho inmueble un valor tributable de $202,880, bajo la codificación 040 037 013 01 901. En los recibos expedidos este valor tributable se figuró en la siguiente forma: tierras, $37,300; y, estructuras, $165,580. Conforme a las tarjetas de tasación ofrecidas por el propio contribuyente, los $165,580 se distribuían así: edificio Núm. 1, $82,690; edificio Núm. 2, $78,890, y maquinaria, $4,000.00.

Al verificarse en 1958 la primera revisión en la tasación científica, aparece de las tarjetas que la valoración fue aumentada según el siguiente cuadro comparativo:

|  | 1951 | 1958 |
|---|---|---|
| Solar | 32,300 | 61,850 |
| Edificio 1 | 82,690 | 105,490 |
| Edificio 2 | 78,890 | 100,360 |
| Maquinaria | 4,000 | 6,440 |

Sin embargo, al expedirse los recibos para los años 1958–59 hasta el 1961–62, bajo idéntica codificación, y haciendo constar que se trataba de dos estructuras de hormigón (2 H), se figuró como valor tributable la suma de $173,780, de la cual correspondían $61,850 al solar y $111,930 a las estructuras. Un simple cálculo aritmético demuestra que al computarse

el valor de las estructuras para trasladarlo y expedir el recibo sólo se consideró el valor del edificio Núm. 1, $105,490, y el de la maquinaria, $6,440, y que se ignoró completamente el valor del edificio Núm. 2, $100,360.00.

En 2 de octubre de 1961 el Secretario notificó al contribuyente recibos suplementarios para los años 1958–59 a 1960–61, bajo la codificación 040 037 013 01 002, por una estructura de hormigón, con un valor tributable de $100,-360.00. Seis días después le notificó un recibo suplementario para el año 1961–62, bajo idéntica codificación y por el mismo edificio que en esta ocasión se valoró en $182,520. El aumento de $82,160 corresponde al 70% de la obra de ampliación de los tres pisos superiores del edificio Núm. 2. (¹)

Por entender que se trataba de una tasación "retroactiva" del inmueble que ya había sido tasado "definitivamente" —los recibos originales expedidos por el Secretario habían sido satisfechos totalmente— el contribuyente Salom instó querella ante el Tribunal Superior, Sala de San Juan, para que se ordenara la cancelación de los recibos suplementarios. Alegó además que el Secretario carecía de facultad para notificar estos recibos "por no haberse omitido propiedad en la tasación . . . ni tampoco existir estructuras nuevas que justifiquen los mencionados recibos retroactivos." (²)

El tribunal de instancia declaró con lugar la querella. Los fundamentos para ello aparecen de los siguientes dos párrafos de su sentencia:

"De los recibos pagados originalmente aparece que la imposición contributiva se hizo sobre dos estructuras, o sea la original

---

(¹) Para el año 1962–63 el inmueble se tasó en $402,560, distribuido en la siguiente forma: solar, $61,850; edificio Núm. 1, $105,490; edificio Núm. 2, $217,730; maquinaria, $17,490. Aunque la contribuyente acudió en instancia separada a impugnar la tasación, posteriormente estipuló que la contribución se determinara a base de este valor tributable.

(²) En el curso del pleito el contribuyente aceptó la procedencia del aumento de $82,160 para el año 1961–62 que correspondía al valor de lo edificado en la ampliación del edificio Núm. 2.

de 1929 y el anexo de 1951 y corresponde asimismo por la codificación '901' que aparece del recibo.

"Para el año 1957 hubo una retasación de la propiedad y para los años a que se refiere esta acción aparece de los recibos que el solar, la edificación de 1929 y el anexo de 1951 (tierras y 2 H) están valoradas en las sumas que se mencionan anteriormente. La tasación adicional de 1961 se refiere a una estructura (1 H). No puede decirse que esa estructura sea otra distinta a las que se refieren los recibos ya pagados por el contribuyente. En estos recibos se le dio al inmueble una valoración inferior a la que se intentaba dar, pero todo ello estaba bajo el control del demandado. Lo que se hizo en 1961 podía hacerse prospectivamente ya que los recibos habían sido pagados y para esa fecha, y desde 1951, la estructura anexa había sido tasada y valorada. No había sido omitida en la tasación. Se trata de una valoración inferior a la que se intentaba dar. Y en estos casos la revaloración no puede hacerse con carácter retroactivo."

Resolviendo una solicitud de reconsideración, el tribunal ratificó su criterio sobre la improcedencia de los recibos suplementarios mediante una corta resolución que dice:

"No puede sostenerse que al pagar el contribuyente su recibo originalmente no pagó por el solar y dos estructuras. El nuevo recibo sería por una estructura adicional. El contribuyente pagó por dos estructuras y solar que fueron tasados, pero se les dio un valor inferior al que se le intentaba dar. Los recibos y la codificación indicaban que las estructuras y el solar habían sido tasados. El nuevo recibo sería una duplicidad."

1. La ley aplicable se centraliza en el Art. 303 del Código Político, ed. 1902, según enmendado posteriormente,([3]) 13 L.P.R.A. sec. 454, que dispone:

---

([3]) El texto vigente corresponde sustancialmente con el de la Ley de 14 de marzo de 1907 (Leyes, pág. 330, 337). La última ley enmendatoria—Núm. 67 de 16 de junio de 1954 (Leyes, pág. 357)—incorporó la disposición que hizo mandatoria la condonación de los recargos cuando el contribuyente no fuere responsable de la omisión de la tasación de la propiedad, facultad que hasta entonces era discrecional del Secretario, y adicionó la última oración referente al término para la tasación y revisión de la tasación de bienes muebles.

"Que siempre que el Secretario de Hacienda de Puerto Rico tuviere conocimiento de que alguna propiedad inmueble sujeta a contribución haya sido omitida en la tasación de la propiedad de cualquier contribuyente durante cualquier año o años económicos, a partir del año económico de 1901–02, será su deber hacer que se tase inmediatamente por los años durante los cuales dicha propiedad no ha sido tasada, y agregarla a la lista de contribuciones por dichos años, procediendo al cobro de las contribuciones que a ella corresponden, así como también al cobro de todos los recargos en que se hubiere incurrido por no haber pagado prontamente las referidas contribuciones, lo que hará en la misma forma en que recauda las demás contribuciones prescritas en este título; Disponiéndose, sin embargo, que siempre que se hubiere omitido la tasación e imposición de contribuciones sobre dicha propiedad, y el dueño de ella no fuere culpable de esa omisión, tendrá el deber el Secretario de Hacienda de Puerto Rico de condonar totalmente los recargos consiguientes. En todo caso en que se hubiere tasado propiedad, mueble o inmueble, durante un año económico o durante varios, pero se hubiere hecho la tasación a nombre de otra persona distinta del verdadero dueño o poseedor de dicha propiedad, o se hubiere hecho en forma tal que fuese nula, el Secretario de Hacienda de Puerto Rico, cancelará dicha tasación, la eliminará de las listas de contribuciones y retirará y cancelará los recibos de contribuciones o borderós correspondientes a la misma, procediendo a una nueva tasación de dicha propiedad y a corregir las listas de contribuciones de acuerdo con ellas, así como a recaudar en cuanto resultaren pendientes de pago, las contribuciones correspondientes a la antedicha nueva tasación y recaudación de contribuciones sobre la propiedad inmueble que indebidamente no se hubiere tasado. El Secretario de Hacienda o sus agentes encargados de realizar la tasación de la propiedad tendrán hasta el último día del año contributivo para realizar la tasación y revisión de la tasación de propiedad mueble para el año contributivo de que se trate."

■ En *García Commercial* v. *Srio. de Hacienda*, 80 D.P.R. 765 (1958), se discutió extensamente la facultad del Secretario para tasar e imponer las contribuciones sobre la propiedad. Aunque específicamente se trataba allí de la impug-

nación de una contribución sobre propiedad mueble, por vía de comparación se consideró todo lo relativo a la contribución sobre inmuebles. Después de exponer que no existe un límite de tiempo que pueda restringir inherentemente la facultad de dicho funcionario para tasar e imponer las contribuciones sobre la propiedad, dijimos que cualquier limitación tiene que emanar de acción legislativa, y que en tal caso opera como un período de prescripción. A renglón seguido, haciendo referencia al Art. 303, expresamos que "en cuanto a los bienes inmuebles no existe término alguno de prescripción," mas no así respecto a los muebles en que sólo puede hacerse la notificación en cualquier momento antes de que expire el año contributivo para el cual se tasa e impone la contribución. *A contrario sensu*, esta limitación no opera cuando de bienes inmuebles se trata. "En efecto, al autorizar · *la tasación retroactiva* de cualquier propiedad inmueble omitida, dicho precepto legal [el Art. 303] se refiere con toda precisión a '. . . propiedad *inmueble* sujeta a contribución [que] haya sido omitida en la tasación de la propiedad de cualquier contribuyente durante cualquier año o años económicos' " (pág. 774). Vemos, pues, que no constituye un reparo válido a la actuación del Secretario en el presente caso que la tasación e imposición se refiera a años anteriores, y en tal sentido, sea retroactiva. Este fundamento de retroactividad que permea el razonamiento del tribunal de instancia no es pues procedente.

2. Habiéndose dispuesto de este primer apuntamiento, el contribuyente se cobija bajo una interpretación literal del Art. 303 y sostiene que como el precepto mencionado se refiere a propiedad "omitida", no sería de aplicación al presente caso pues de los recibos expedidos se desprende que no se trata de propiedad realmente "omitida" ya que en los mismos se hace referencia a las dos estructuras de hormigón. Descansa enteramente en el valor probatorio de los recibos cursados. Pero esta posición, que acogió el juez

a quo, ignora la realidad que resulta de las tarjetas de tasación que el propio recurrido presentó en evidencia y que explican satisfactoriamente que la discrepancia obedeció al error en que se incurrió al trasladarse al recibo la información de las tarjetas. La referencia errónea en los recibos a dos estructuras de hormigón no significa concluyentemente que se hubiese considerado el edificio Núm. 2. (⁴) Los recibos no sirven otro propósito que notificar al contribuyente de su responsabilidad contributiva, pero no desvirtúan la presunción de validez de las tarjetas o planillas de tasación, Art. 314 del Código Político, 13 L.P.R.A. sec. 461. En este sentido puede considerarse como un caso de propiedad "omitida."

Hemos examinado los casos de otras jurisdicciones que se citan por el recurrido. Independientemente de las diferencias existentes entre los estatutos envueltos, los hechos son distinguibles. En verdad la situación que presenta este caso es muy particular.

■ Huelga decir que como la "omisión" respondió a un error administrativo, sólo pueden cobrarse intereses y recargos tomando la de la notificación como la fecha para deducir los términos en que éstos son imponibles.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 12 de febrero de 1964, y se declarará la demanda sin lugar.*

---

(⁴) En *Professional Realty Corp.* v. *Srio. de Hacienda,* 92 D.P.R. 215 (1965), describimos en términos generales el proceso que se siguió para la primera revisión de la tasación científica que tuvo lugar en 1957. Dijimos que "consideró los cambios ocurridos en el mercado, especialmente los que respondían a la transformación progresiva en el orden material, y fundamentalmente al incremento en el costo de construcción que se determinó era alrededor de un 25%, para ser exactos, 24.91%, incluyéndose para ello el sobrevenido en los materiales y en la mano de obra."